J. CHRISTOPHER JACZKO (149317)
ALLISON H. GODDARD (211098)
JACZKO GODDARD LLP
4401 Eastgate Mall
San Diego, CA 92121
Telephone:     (858) 404-9205
Facsimile:     (858) 225-3500

DAVID J. SHEIKH
DINA M. HAYES
JOSEPH A. CULIG
ANNA B. FOLGERS
NIRO, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, IL 60602
Telephone:     (312) 236-0733
Facsimile:     (312) 236-3137

Attorneys for Plaintiff MORVIL TECHNOLOGY, LLC

EDWARD R. REINES (135960)
PAUL T. EHRLICH (228543)
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone:     (650) 802-3000
Facsimile:     (650) 802-3100

Attorneys for Defendants
MEDTRONIC ABLATION FRONTIERS LLC
and MEDTRONIC, INC.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORVIL TECHNOLOGY, LLC, | Case No. 3:10-cv-02088-BEN-BGS |
| Plaintiff, | **JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING MORVIL'S REQUEST TO COMPEL PRODUCT OF DOCUMENTS WITHHELD BY DEFENDANTS UNDER THE "COMMON LEGAL INTEREST" DOCTRINE** |
| v. | |
| MEDTRONIC ABLATION FRONTIERS LLC and MEDTRONIC, INC., | |
| Defendants. | |

Case No. 3:10-cv-02088-BEN-BGS

1

## PLAINTIFF, MORVIL TECHNOLOGY, LLC'S, ARGUMENT

2

Plaintiff Morvil Technology, LLC requests that certain documents withheld as privileged

3 by Defendants Medtronic Ablation Frontiers, LLC and Medtronic, Inc. be produced

4 immediately. Not only do the documents fail to meet the requirements of the attorney-client

5 privilege; the disclosure of such documents to a third party waived any privilege and the

6 "common legal interest" theory does not apply. Defendants' vague "boilerplate" descriptions of

7 the documents do not meet the legal requirements for withholding them from production. To the

8 extent Defendants now argue that the documents are directed to defending against willful

9 infringement, they should be ordered to supplement their log to provide details as to this defense.

10

### I.     BACKGROUND

11

On January 26, 2011 Morvil served its First Set of Requests for Production, seeking:

12
13
> 54. All documents and things regarding the valuation of the products, services, intellectual property, inventory, know-how and other assets of Ablation Frontiers, Inc. that were sold and/or transferred to Medtronic, Inc.

14
> 55. All documents and things regarding the transfer of assets, purchase, sale, lease or license between Ablation Frontiers, Inc. and Medtronic, Inc.

15 (See Ex. A). Defendants produced some documents in response to these requests, but withheld

16 others based on the attorney-client privilege. On June 6, 2011, Morvil received Defendants'

17 Second Supplemental Privilege Log, which identifies documents responsive to Morvil's requests

18 54 and 55, including those prepared by or on behalf of *either* Ablation Frontiers, Inc. *or*

19 Medtronic Inc. in connection with Medtronic's purchase of Ablation Frontiers for 225 million

20 dollars in early 2009 (Ex. B).[1]   This purchase resulted in the sale of all of the accused products

21 and related intellectual property from Ablation Frontiers to Medtronic in late 2009. Specifically,

22 Defendants' log identifies 8 documents that were transmitted *between* Medtronic, Inc. on the one

23

24
_____
[1] This case was filed on July 29, 2010 – more than a year after Ablation Frontiers and
25 Medtronic negotiated this business transaction.

26

hand and Ablation Frontiers, Inc. on the other hand during the negotiation of this arms-length, $225 million transaction.  The below entry is a representative example, with highlighting added:

| No | Date Sent | Author | Recipient | Priv. Type | Priv. Description |
|----|-----------|--------|-----------|------------|-------------------|
| 40 | 10/30/2008 | Jim Shay (AFI Outside Counsel: Shay Glen) | Harness Dickey & Pierce PLC (Medtronic Outside Counsel); Scott Bardell (Medtronic In-House Patent Counsel); Steve Bauer (Medtronic In-House Counsel); Jeanne Forneris (Medtronic In-House Counsel); Mike Jaro (Medtronic In-House Counsel); Chris King (Medtronic Employee); Greg McAllister; (Medtronic In-House Counsel); Stan Myrum (Medtronic Employee); Alex Peters (Medtronic In-House Counsel) | AC | Privileged communication in confidence between represented parties and their attorneys for purposes of furthering a common legal interest. |

(Ex. C at p. 4).  From the face of the log entries themselves (many of which are insufficient), the communications between Ablation Frontiers and Medtronic during the business deal between them cannot be immune from production based on any asserted "common legal interest."

## II.   THE IMPROPERLY WITHHELD DOCUMENTS ARE RELEVANT TO AT LEAST THE ISSUES OF DAMAGES AND NON-OBVIOUSNESS

Requests 54 and 55 seek the production of materials between Ablation Frontiers and Medtronic that are probative of the value of the infringing technology, the efficacy of products and methods that practice the patented inventions, the commercial need for such technology, the market pressure for the solutions provided by the accused products and the general market for RF ablation technology.  Medtronic's and Ablation Frontiers' contemporaneous views about the value of the accused products are directly relevant to the issue of damages. See, e.g. Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116 (S.D.N.Y. 1970) (Factor 11: "The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use") and (Factor 10: "The nature of the patented invention...and the benefits to those who have used the invention").  Moreover, the commercial need and market pressure regarding the accused products are relevant to Morvil's position regarding the non-obviousness of the patents in suit.  In re Klein, 2011 U.S. App. LEXIS 11412 at *6 (Fed. Cir. 2011).  And,

because the documents were created and exchanged between Medtronic and Ablation Frontiers

before this lawsuit was even contemplated, let alone filed, they are free from the manipulation of

litigation counsel for the purposes of Defendants' litigation strategies.  Defendants' statements

that they do not intend to rely on the documents suggest that they are favorable to Morvil and

withholding them would unfairly prejudice Morvil.

### III.   THE DOCUMENTS BETWEEN MEDTRONIC AND ABLATION FRONTIERS SHOULD BE PRODUCED

Defendants' reliance on a "common legal interest" privilege attempts to hide relevant

documents and sidesteps the necessary legal analysis as to whether the documents are protected

by an attorney-client privilege in the first place.  Once the applicability of the privilege is

determined, and upon waiver to a third party, the Court only then considers whether the

documents are immune from production under the common legal interest exception.  <u>Nidec</u>

<u>Corp</u>. v. <u>Victor Company of Japan</u>, 249 F.R.D. 575, 578 (N.D. Cal. 2007) ("the joint defense and

common interest doctrines are not privileges in and of themselves.  Rather, they constitute

exceptions to the rule on waiver where communications are disclosed to third parties.)

### A.   The Documents Are Not Attorney-Client Communications

"Communications regarding business-related advice, rather than for legal advice, are not

protected by the attorney-client privilege." <u>Callaway Golf Co</u>. v. <u>Screen Actors Guild</u>, 2009 U.S.

Dist. Lexis 1763, *5-*6 (S.D. Cal. 2009); see also <u>U.S</u>. v. <u>ChevronTexaco Corp</u>., 241 F. Supp. 2d

1065, 1075 (N.D.Cal. 2002) ("the mere fact that outside counsel was copied with the email will

not shield communications not made for the purpose of securing legal advice.")  Defendants, the

parties asserting the privilege, bear the burden of establishing each element of the attorney-client

privilege.  <u>Lenz</u> v. <u>Universal Music Corp.</u>, 2009 WL 3573990 *1 (N.D. Cal. 2009).  That is,

Defendants must show that each of the communications constitutes: 1) legal advice sought, (2)

from a professional legal adviser in his or her capacity as such, (3) with the communication

- 3 -

relating to that purpose, (4) made in confidence, (5) by the client. <u>Lenz</u>, 2009 WL 3573990 at *2, *citing* <u>Admiral Inc. Co.</u> v. <u>U.S. Dist. Ct.</u>, 881 F.2d 1486, 1492 (9th Cir. 1989).   Defendants' privilege log fails to satisfy these requirements and their arguments completely ignore this inquiry merely concluding that the communications are privileged.   Documents 39-42, 51-52 and 57-58 were exchanged when no attorney-client relationship existed between Ablation Frontiers and Medtronic as they were separate parties negotiating a business transaction.   Thus, the documents are not privileged, making the "common legal exception" inapplicable.

**B.     Disclosure to a Third Party Waived Any Alleged Privilege**

Even if the documents are found to be attorney-client privileged documents, the disclosure of such documents to an unrelated party in a business transaction waived any such privilege.   The attorneys acting on behalf of Medtronic or Ablation Frontiers were merely acting as conduits of business information, not providers of ***legal advice***.   The mere involvement of legal counsel does not inevitably invoke the attorney-client privilege.   As opposed to <u>In Re Regents</u> (relied on by Defendants), Defendants were not joint inventors to a patent who communicated to a single patent prosecution attorney, a situation that precluded waiver.

**C.     Medtronic/Ablation Frontiers Did Not Share Common Legal Interest**

Even if the first two inquiries suggested that the subject documents were properly withheld (and they do not), the interests of Medtronic and Ablation Frontiers during their negotiations were not sufficiently aligned to be afforded the "common legal interest" exception. <u>In Re Imperial</u>, 179 FRD 286, 288 (S.D. Cal. 1998) (rejecting common legal interest because the parties had "adversarial interests, rather than common interest and goals").   Medtronic was attempting to negotiate a purchase price and other terms that it believed were acceptable and Ablation Frontiers was attempting to negotiate a sale price and other terms that it believed were acceptable.   Medtronic and Ablation Frontiers were not co-defendants at the time the documents were exchanged, and were not intending to further a common legal interest.   Each side had its

- 4 -

own attorneys who were acting in the best interests of *their* respective clients.  Defendants' request to withhold all documents exchanged between parties to a commercial transaction flies in the face of the holding in Nidec which criticized the Britesmile and Hewlett-Packard cases relied on by Defendants and refused to expand the "common interest doctrine" to cover documents not intended to further a specific legal effort in which the parties hold a joint interest.  Nidec, 249 F.R.D. at 580 (communication at issue was designed "to further a commercial transaction in which the parties, if anything have opposing interests.")

As necessary, Morvil requests that the Court review the substance of the documents *in camera* to determine if the materials contain business information, as opposed to *legal advice*, which would take the materials outside the scope of the recognized "common legal interest" exception.   The common-interest privilege "does not protect communications made in furtherance only of a common *business* interest." Lenz, 2009 WL 3573990 at *1).  See also, Sneider v. Kimberly-Clark Corp., 91 F.R.D. 1, 8 (N.D. Ill. 1980) ("Merely because the subject of a document deals with a patent, this fact alone is not enough to cloak such a communication within the attorney-client communication.").  As a recent district court in the Ninth Circuit noted:

> While the parties certainly intended to structure and implement this commercial transaction in compliance with applicable securities laws and regulations, this is insufficient to show they shared a common legal interest.

FSP Stallion v. Luce, 2010 WL 3895914, *21 (N.D. Nev. 2010).  Should the Court determine that the documents  are merely communications of business information in furtherance of a commercial transaction (namely a $225 million acquisition), they should be produced.

## IV.    MORVIL'S REQUESTED RELIEF

Morvil requests that Documents 39-42, 51-52 and 57-58 be produced and Defendants be prohibited from withholding any information during a deposition regarding these documents.  Defendants should also be required to supplement their log to provide information as to the "third party IP" and "third party patents" discussed in its attempts to withhold this material.

- 5 -

### DEFENDANTS' ARGUMENT

"In patent cases the primary focus should be on the real world, on the similarity of the products involved in the dispute and on the history of relevant inventions and commercial conduct." *Hewlett-Packard Co. v. Bausch & Lomb, Inc.* ("*HP*"), 115 F.R.D. 308, 310 (N.D. Cal. 1987). Instead, Morvil has fixated on documents prepared years ago by Defendants' respective legal counsel analyzing the scope of patents as they relate to the accused products, documents which Defendants have not indicated they will rely upon and create no disadvantage to Morvil. "[T]he tendency of some lawyers, especially in intellectual property cases, to spend an inordinate amount of time attempting to gain an advantage in the litigation by making use of the adversary attorney's words and opinions . . . leads to costly, unproductive, and unseemly disputes." *Id.* Morvil's request for these materials should be rejected and the parties should focus on how the accused products actually work, how the patent claims should be construed, and what the prior art in fact discloses – based on the primary evidence that answers those questions.[2]

Morvil asserts that no privilege exists for documents exchanged pursuant to a strict confidentiality agreement between separately represented parties in furtherance of a common legal interest. But it long has been recognized that such communications certainly can be protected by the joint-defense privilege, *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583 n. 7 (9th Cir. 1987), and the common-interest doctrine, *see, e.g., Ctr. for Biological Diversity v. Office of Mgmt. & Budget*. No. C 07-04997 MHP, 2009 WL 1246690, at *9 (N.D. Cal. May 5, 2009), *In re McKesson HBOC, Inc. Secs. Litig.*, No. C-99-20743 RMW, 2005 WL 934331, at *7 n.10 (N.D. Cal. Mar. 31, 2005) (quoting *Cavallaro v. United States*, 284 F.3d 236, 250 (1st Cir.

---

[2] Defendants already have produced *inter alia* design documentation and sales figures for the accused products, as well as detailed performance forecasts of AFI prepared by MDT during the due diligence phase. Contrary to Morvil's assertion, the fact that Defendants do not intend to rely on these communications as a sword or a shield bears no indication of their contents and Morvil points to no actual, unfair prejudice it will suffer because of their mere existence.

1    2002)), and *HP*, 115 F.R.D. at 310.

2            Defendant Medtronic Ablation Frontiers ("MAF") was formed after Defendant

3    Medtronic, Inc. ("MDT") acquired Ablation Frontiers, Inc. ("AFI") in its entirety.  Before the

4    acquisition, MDT, represented by the law firm Harness, Dickey & Pierce PLC ("HDP"), and

5    AFI, represented by the law firm Shay Glenn, LLP ("Shay Glenn"), cooperated in a formal due

6    diligence process.  Subject to a strict confidentiality agreement, AFI and MDT, through their

7    respective counsel, shared legal analysis as to the scope of AFI's patents, including identification

8    of specific AFI products believed to be covered by specific patents, and the scope of several

9    third-party patents and the identification of certain claims, specifically as their scope related to

10   AFI's IP.  Rather than a loan, sale of some stock, commercial sale of products for resale, or sale

11   of real estate, MDT and AFI were contemplating the wholesale acquisition of AFI by MDT.  The

12   legal interests of AFI and MDT in evaluating these legal issues were aligned as both parties were

13   committed to the transaction and working towards its successful completion.[3]

14           As this Court has recognized, the attorney-client privilege exists:

15           (1) Where legal advice of any kind is sought (2) from a professional legal adviser
             in his capacity as such, (3) the communications relating to that purpose, (4) made
16           in confidence (5) by the client, (6) are at his instance permanently protected (7)
             from disclosure by himself or by the legal adviser, (8) unless the protection be
17           waived.

18   *Coleman v. Sterling*, Civil No. 09-CV-1594-W (BGS), 2011 WL 1099793, at *2 (S.D. Cal. Mar.

19   24, 2011) (citation omitted).  Analysis of the scope of third-party or AFI's IP indisputably

20   comprises of legal advice, and each communication involved attorneys acting in their capacity as

21   legal advisers.  The communications were made in confidence and not disclosed to third-parties.

22   AFI, MDT, and now MAF continue to insist that the communications be protected from

23   _____

24           [3] Defendants can provide evidence in support of the facts referenced herein if the Court
     would like such evidence but understand the Court's scheduling order dated June 8, 2011 as
25   limiting the scope of attachments to only the relevant portions of Defendants' privilege log.

26                                                                                      - 7 -

disclosure.  *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (finding that a corporation's authority to assert privilege passes to new management upon the change in control).   Morvil's contention that the Court need not reach the common-interest doctrine because of the exchange between AFI and MDT completely is circular.   The privilege survived the exchange precisely because it was designed to further a shared, common legal interest.

The common-interest doctrine applies "where (1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *In re McKesson*, 2005 WL 934331, at *7 n.10 (quotation omitted).   Here, the communications were made in the course of a matter of common legal interest because following an acquisition of AFI, MDT stood to inherit all of AFI's assets and liabilities.  *See Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1172 (D.S.C. 1974) (finding that overlapping commercial and legal interest for a third party does not negate the effect of the legal interest in establishing a community of interest).   If AFI's IP was believed to infringe other IP, then MDT and AFI's successor would face that liability together in the event of the acquisition and would want to benefit from opinions of AFI's legal counsel.

Courts repeatedly have found that such shared interests are sufficient to warrant protection under the common-interest doctrine.   In *Tenneco Packaging Specialty & Consumer Prods., Inc. v. S.C. Johnson & Son, Inc.*, Case No. 98 C 2679, 1999 WL 754748, at *2 (N.D. Ill. Sept. 14, 1999), the court found that Downbrands and S.C. Johnson shared identical legal interests where, during due diligence for the purchase of Downbrands' '299 patent, Downbrands shared with S.C. Johnson a opinion letter from its counsel regarding the scope of the patent-in-suit.  *Id.* at *7-8.  Similarly, in *HP*, 115 F.R.D. at 310, Bausch & Lomb shared a copy of a letter concerning the patent-in-suit with GEC, a potential buyer of part of its business.   The court found that the common interests shared were "identical issues of law and of fact: was plaintiff's patent valid and enforceable, and, if so, did the one product that [Bausch & Lomb] and GEC marketed

- 8 -

1    at different times infringe that patent?" *Id.* at \*6. *See also, e.g., In re Regents of the Univ. of*

2    *Cal.*, 101 F.3d 1386, 1390 (Fed. Cir. 1996) (finding that a patentee and a potential exclusive

3    licensee shared substantially identical legal interests because both parties had the same interest in

4    obtaining strong and enforceable patents), *Britesmile, Inc. v. Discus Dental, Inc.*, No. C 02-3220

5    JSW (JL), 2004 WL 2271589, at \*2 (N.D. Cal. Aug. 10, 2004) (finding that an IP purchaser and

6    an IP seller shared "a common legal interest in the issue of whether the technology that [the

7    seller] sold to [the purchaser] was patentable and whether it infringed any patent."). Morvil cites

8    precedent inapposite to the facts of this case, as it concerns communications between a debtor

9    and a creditor, *Imperial*, 179 F.R.D. at 288, or regarding technical, patent-prosecution

10   documents, *Sneider*, 91 F.R.D at 8, the structure of a real-estate transaction, *FSP Stallion*, 2010

11   WL 3895914, at \*21, or the sale of stock, *Nidec*, 249 F.R.D. at 577. [4]

12      Likewise, the communications here were designed to further the legal effort and were not

13   merely documents that happen to implicate tangentially a legal interest. They concerned the

14   scope of AFI's IP and  third-party IP as it applied to AFI's products and the articulation of a

15   legal strategy concerning that scope. In *Tenneco*, *Britesmile*, and *HP*, the courts all addressed

16   situations where the communication concerned the scope of third-party IP as it relates to an

17   acquisition of the target's IP. As in *HP*, 115 F.R.D. at 310, AFI and MDT shared common legal

18   interests in whether the products that AFI and MDT would market infringed third-party IP, and

19   communications addressing the scope of the IP certainly were designed to further that interest.

20      Lastly, the steps taken to preserve the confidentiality of the communications at issue

21   demonstrate the lack of waiver. Communications from HDP to Shay Glenn and AFI were

22

23       [4] *Nidec* "criticized" interpretations of *HP* only where they "extend[] [the common-interest privilege] *generally* to disclosures made in connection with the prospective purchase of a

24   business." 249 F.R.D at 579 (emphasis added). In contrast to mere general disclosures, the communications at issue here concerned the scope of IP and liabilities that AFI and MDT would

25   face together following an acquisition.

26                                                      - 9 -

identified as privileged, and communications from AFI's to HDP were kept in strict confidences and not shared with MDT.  Instead, HDP summarized its findings into reports provided only to a list of specifically identified persons at MDT also subject to a strict confidentiality agreement.  If AFI and MDT elected to discontinue the pursuit of their common interests, MDT was to return all of AFI's materials within thirty days.  In *Tenneco*, the communication also was made during the due diligence process and shared only with limited persons subject to a confidentiality agreement.  1999 WL 754748, at *2.  In *HP*, only two copies of the communication were shared, the receiving party was instructed not to make copies or to share it with others, and the copies were returned.  AFI and MDT took efforts at least as significant to prevent waiving the privilege.

*HP* also detailed the policy justifications of the common-interest doctrine, noting that an overly-expansive waiver doctrine impedes discovery and increases the costs of litigation.  115 F.R.D. at 310.  The court found that:

> [T]he principal purpose of waiver doctrine should be to protect against the unfairness that would result if privilege-holders were able to use, as a sword or shield, some of the information contained in the subject communication but could deny their opponents access to the remainder of the communication.

*Id.* at 310-11.  MAF is not seeking to use the communications as a sword or a shield, and the communications do nothing to place Morvil at an unfair disadvantage.  In identical circumstances, *HP* concluded that the scant interests in favor of waiver were outweighed by the chilling effect of waiver and the increase in litigation that could result if the free-flow of information during the due diligence process were plugged shut.  *Id.* at 311.

Dated:      June 24, 2011               JACZKO GODDARD LLP

                                        NIRO, HALLER & NIRO


                                        By:     /s/ Allison H. Goddard
                                                Allison H. Goddard
                                                Attorneys for Plaintiff
                                                MORVIL TECHNOLOGY, LLC


                                        WEIL, GOTSHAL & MANGES LLP


                                        By:     /s/ Edward R. Reines
                                                Edward R. Reines
                                                Attorneys for Defendants
                                                MEDTRONIC ABLATION
                                                FRONTIERS LLC and
                                                MEDTRONIC, INC.

1

## CERTIFICATE OF SERVICE

2      The undersigned hereby certifies that on June 24, 2011, the foregoing **JOINT MOTION
FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING MORVIL'S**
3  **REQUEST TO COMPEL PRODUCT OF DOCUMENTS WITHHELD BY
DEFENDANTS UNDER THE "COMMON LEGAL INTEREST" DOCTRINE** was filed
4  with the Clerk of Court using the CM/ECF system, which will then send a notification of such
filing to the following counsel of record.

5

6                       Edward R. Reines (Bar No. 135960)
                        edward.reines@weil.com
                        Paul T. Ehrlich (Bar No. 228543)
7                       paul.ehrlich@weil.com
                        Robert L. Gerrity
8                       robert.gerrity@weil.com
                        Sean J. O'Rourke
9                       sean.orourke@weil.com
                        WEIL, GOTSHAL & MANGES LLP
10                      Silicon Valley Office
                        201 Redwood Shores Parkway
11                      Redwood Shores, CA  94065
                        Telephone:  (650) 802-3000
12                      Facsimile: (650) 802-3100

13                      ***Attorneys for Defendants***
                        ***Medtronic Ablation Frontiers LLC and***
14                      ***Medtronic, Inc.***

15

I certify that all parties in this case are represented by counsel who are CM/ECF participants.
16

17

18                                     /s/ Allison H. Goddard
                                       Attorneys for Morvil Technology, LLC
19                                     NIRO, HALLER & NIRO

20

21

22

23

24  JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE
    REGARDING MORVIL'S REQUEST TO COMPEL PRODUCT OF
    DOCUMENTS WITHHELD BY DEFENDANTS UNDER THE
25  "COMMON LEGAL INTEREST" DOCTRINE – Case No. 3:10-cv-
    02088-BEN-BGS
26