UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORVIL TECHNOLOGY, LLC<br><br>                              Plaintiff,<br><br>        v.<br><br>ABLATION FRONTIERS, INC.;<br>MEDTRONIC ABLATION FRONTIERS,<br>LLC; and MEDTRONIC, INC.<br><br>                              Defendants,<br>_____<br><br>AND RELATED COUNTERCLAIMS. | Civil No.    10-CV-2088-BEN (BGS)<br><br>**ORDER ON JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE PLAINTIFF'S REQUEST TO COMPEL DOCUMENTS WITHHELD BY DEFENDANTS UNDER THE "COMMON LEGAL INTEREST" DOCTRINE** |

Currently before the Court is the parties' joint motion for determination of discovery dispute regarding production of "common legal interest" documents.[1] (Doc. No. 63.) Plaintiff Morvil Technology, LLC ("Morvil") moves to compel documents 39[2]-42, 51-52 and 57-58 identified on Defendants Medtronic Ablation Frontiers, LLC and Medtronic, Inc.'s ("Medtronic") privilege log, which Defendants have withheld as attorney client privileged. (*Id.*) The Court, for the reasons set forth below, denies Plaintiff's request to compel the documents.

---

[1] Also before the Court is Plaintiff's ex parte motion to file an Exhibit B in support of its request to compel the documents. (Doc. No. 60.) Defendants' filed an opposition to the ex parte request. (Doc. No. 61.) The Court, after reviewing the proposed Exhibit B, does not find it necessary in deciding the instant joint motion and denies Plaintiff's ex parte request.

[2] Defendants agreed to produce document 39 and therefore the Court will not discuss Plaintiff's request for document 39.

The disputed documents at issue were either authored by Ablation Frontiers, Inc.'s ("AFI") outside counsel for AFI, or Medtronic's outside counsel for Medtronic. The documents were subsequently turned over to each respective party by the other during Medtronic's negotiations to acquire all of AFI's products and related intellectual property. (Doc. No. 63 at 1-2.) Morvil argues that the documents are not privileged because they regarded business related advice, not legal advice. (*Id.* at 4.) Morvil requests the court to review *in camera* the documents to determine if the material contains business information as opposed to legal advice. (*Id.* at 5.) After reviewing the parties' briefing, the Court ordered Defendants to lodge the disputed documents with the Court for an *in camera* review. (Doc. No. 100.)

The Ninth Circuit typically applies an eight part test to determine whether material is protected by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n. 2 (9th Cir.1992) (quoting *United States v. Margolis (In re Fischer)*, 557 F.2d 209, 211 (9th Cir.1977)). The Court has reviewed these documents *in camera* and determines that they are attorney-client privileged documents as between AFI's outside counsel and AFI, and between Medtronic's outside counsel and Medronic. The documents satisfy the above elements for the privilege to apply.

Notwithstanding, Morvil argues that disclosure of such documents to an unrelated third party in a business transaction waived such privilege. (Doc. No. 63 at 4.) Defendants respond that the disclosure of the documents between Medtronic and AFI through their respective counsel does not waive the privilege because the communications fit within the common legal interest doctrine. (*Id.* at 8.) The common-interest doctrine constitutes an exception to the rule on waiver where communications are disclosed to third parties. *See United States v Bergonzi*, 216 F.R.D. 487, 495-96 (N.D. Cal. 2003). "The common interest privilege... applies where the (1) communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Id.* at 495 (citation omitted).

Morvil argues that this doctrine does not apply to this case because the communications were in furtherance of a business interest. (Doc. No. 63 at 5.) In support of this argument, Morvil asserts that

Medtronic was attempting to negotiate a purchase price and other terms that it believed were acceptable and AFI was attempting to do the same. (*Id.* at 4.) Defendants counter this assertion by noting that the disclosures were subject to a strict confidentiality agreement between AFI and Medtronic, and the documents constituted a shared legal analysis as to the scope of AFI's patents, including identification of specific AFI products believed to be covered by specific patents, and the scope of several third party patents and the identification of certain claims, specifically as their scope related to AFI's intellectual property. (*Id.* at 7.)

The Court, after review of the disputed documents, finds that they purport to disclose what Defendants have proffered in their moving papers. The issue remains as to whether said disclosure of this subject matter to a third party as part of what in essence is a business transaction satisfies the common legal interest exception. Defendants contend that "if AFI's IP was believed to infringe other IP, then Medtronic and AFI"s successor would face liability together in the event of the acquisition and therefore would want the benefit from opinions of AFI's legal counsel." (*Id.* at 8.)

Joint anticipated litigation has been held to be a common legal interest among buyer and seller of IP. *See, e.g.*, *Hewlett-Packard v. Bausch & Lomb, Inc.*, 115 F.R.D. 308 (N.D.Cal.1987). The court in *Nidec Corp. v. Victor Company of Japan*, 249 F.R.D. 575 (N.D. Cal. 2007), did not find the exception applied in that "there appears little to indicate that the Defendants and the TPG fund might ever engage in joint litigation. The TPG fund was simply considering buying a majority share of JVC. It will not likely become a joint defendant with JVC." *Id.* at 579.

It is unclear from the parties' papers whether AFI and Medtronic and/or its successor would face joint litigation. Morvil stresses that Medtronic and AFI were not co-defendants at the time the documents were exchanged, and were not intending to further a common legal interest. Defendants have not proffered any facts that would indicate that AFI would face joint litigation along with Medtronic due to alleged infringements of its products sold before the wholesale acquisition of AFI to Medtronic.

The *Nidec* court went on to note that, "[t]he protection of the privilege under the community of interest rationale, however, is not limited to joint litigation preparation efforts. It is applicable whenever parties with common interests join forces for the purpose of obtaining more effective legal assistance." *Nidec, 249 F.R.D. at* 578 (quoting Rice, Attorney Client Privilege in the United States § 4:36, at 216). The

court in *In re the Regents of the Univ. of California*, 101 F.3d 1386 (Fed. Cir. 1996), held that the common-interest doctrine applies to documents that "'address either anticipated litigation or a joint effort to avoid litigation.'" *Id.* at 1391 (quoting *Edward Lowe Indus., Inc. v. Oil-Dri Corp. of America*, 1995 WL 410979 *2 (N.D.Ill. July 11, 1995)). In *Regents*, third party Lilly was negotiating for the exclusive license to UC's patents. *Id.* at 1389-90. Genentech, the plaintiff in that case, contended that the communications between UC and Lilly attorneys were not covered by the privilege because they were not made in anticipation of litigation. The court concluded that the communications were subject to the attorney-client privilege and that the common-interest doctrine applied, reasoning in part that the communications were designed to reduce or avoid litigation. *Id.* at 1391.

Analogous to the *Regents* case, Defendants' proffered intentions for the mutual exchange of the privileged documents between AFI and Medtronic establish that these parties had a common legal interest in avoiding or reducing litigation by sharing the legal documents described herein.  There may indeed have been an overlap of commercial and legal interests given the purpose of the disclosure, namely wholesale purchase of AFI by Medtronic.  But this overlap does not negate the effect of the legal interest in establishing a community of interest. *See Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1172 (D.S.C. 1974).

The court in *Regents* further held that another common legal interest protected the disclosure of the privileged documents:

> We conclude that the legal interest between Lilly and UC was substantially identical because of the potentially and ultimately exclusive nature of the Lilly-UC agreement.  Both parties had the same interest in obtaining strong and enforceable patents. ... Lilly was more than a non-exclusive licensee, and shared the interest that UC would obtain valid and enforceable patents. UC is a university seeking valid and enforceable patents to support royalty income. Lilly is an industrial enterprise seeking valid and enforceable patents to support commercial activity.  Valid and enforceable patents on the UC inventions are in the interest of both parties.

*Regents*, 101 F.3d at 1390.

Likewise, Medtronic and AFI were contemplating the wholesale acquisition of AFI by Medtronic. The legal interests of AFI and Medtronic in evaluating these legal interests were aligned as both parties were committed to the transaction and working towards its successful completion. (Doc. No. 63 at 7.) AFI and Medtronic shared common legal interests in whether the products that AFI and Medtronic would market infringed third party IP, and the communications addressing the scope of the IP certainly were designed to

further that interest. (*See id.* at 9.)  The Court finds that this mutual interest in valid and enforceable patents fits within the confines of the common legal interests doctrine. *See Tenneco Packg'g Specialty & Consumer Prod., Inc. v. S.C. Johnson & Son, Inc.*, 1999 WL 754748, at * 2 (N.D.Ill. Sept. 14, 1999) ("contrary to Tenneco's assertion, the privilege was not waived when DowBrands showed the opinion to SCJ in due diligence for the asset purchase agreement which gave SCJ rights in the '299 patent); *Britesmile, Inc. v. Discus Dental, Inc.*, 2004 WL 2271589, at *2 (N.D.Cal. Aug. 10, 2004) ("this court finds that Discus and Nathoo share a common legal interest in the issue of whether the technology that Nathoo sold to Discus was patentable and whether it infringed any patent.")

## Conclusion

For the reasons set forth above, the Court denies Plaintiff Morvil's request to compel production of documents 40-42, 51-52 and 57-58 identified on Defendants Medtronic Ablation Frontiers, LLC and Medtronic, Inc.'s privilege log.

**IT IS SO ORDERED**.

DATED: March 8, 2012

**BERNARD G. SKOMAL**
United States Magistrate Judge